EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| JANA R. ROSENKRANZ, JOAN MONDRY and RAMONA DRISCOLL, individually and on behalf of all others similarly situated,<br><br>　　　　　　　Plaintiffs,<br><br>　v.<br><br>ALTRU HEALTH SYSTEM, THE ALTRU HEALTH SYSTEM RETIREMENT COMMITTEE, and JOHN DOES 1-30.<br><br>　　　　　　　Defendants. | CIVIL ACTION NO.: 3:20-cv-00168<br><br>Chief Judge Peter Welte<br><br>**PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITIES** |

　　　　Plaintiffs Jana R. Rosenkranz, Joan Mondry, and Ramona Driscoll (collectively, the "Plaintiffs"), by and through their attorneys, respectfully submit this Notice of Supplemental Authorities submitting (1) *Sacerdote v. New York Univ.*, 2021 WL 3610355 (2d Cir. 2021) (attached hereto as Exhibit A); (2) *In re: Prime Healthcare ERISA Litig.*, 2021 WL 3076649 (C.D. Cal. July 16, 2021) (attached hereto as Exhibit B); (3) *McNeilly, et al. v. Spectrum Health System, et al.*, No. 1:20-cv-00870-PLM-PJG (W.D. Mich. July 16, 2021) (attached hereto as Exhibit C); (4) *Garcia, et al. v. Alticor, Inc., et al.*, No. 1:20-cv-01078-PLM-PJG (W.D. Mich. Aug. 9, 2021) (attached hereto as Exhibit D); and (5) *In re Biogen, Inc. ERISA Litig.*, 2021 WL 3116331 (D. Mass. July 22, 2021) (attached hereto as Exhibit E). The plaintiffs in *Sacerdote*, *Prime Healthcare*, *McNeilly*, *Garcia*, and *Biogen* advanced analogous claims under ERISA as the Plaintiffs here.

### A. The Second Circuit's Decision in *Sacerdote v. New York University* Supports Denying Defendants' Motion to Dismiss

　　　　In *Sacerdote*, the Second Circuit concluded the district court's dismissal of the plaintiffs' "share-class claim" at the motion to dismiss stage was in error because the complaint "sets forth

1

cost differentials of specified basis points for the dozens of mutual funds as to each of which, they claim, NYU should have offered lower-cost institutional shares instead of higher-cost retail shares." *Sacerdote*, 2021 WL 3610355, at *5-8.  Specifically, the court determined "plaintiffs have alleged 'that a superior alternative investment was readily apparent such that an adequate investigation' – simply reviewing the prospectus of the fund under consideration – 'would have uncovered that alternative.'" *Id.* at *17.  The Second Circuit rejected the district court's finding that plaintiffs failed to allege that "the mixes of options in the Plans were imprudent" finding "with respect to the share-class claim, the alleged imprudent choice has nothing to do with the funds' risk profiles; the choice was simply between higher- or lower-cost shares of the same fund." *Id.* at *19-20.  Here, Plaintiffs allege analogous share-class claims.  *See* ¶¶ 81-92.  Accordingly, when considering share-class claims, district courts "must draw reasonable inferences from the complaint in plaintiffs' favor" as set forth by the *Sacerdote* court and deny Defendants' motion to dismiss Plaintiffs' share-class claims.  *Sacerdote*, 2021 WL 3610355, at *6 (citing *Palin v. N.Y. Times Co.*, 940 F.3d 809 (2d Cir. 2019)).  Additionally, the court in *Sacerdote* further reasoned, "[w]hile the absence of a deliberative process may be enough to demonstrate imprudence, the presence of a deliberative process does not, contrary to the dissent's suggestion, suffice in every case to demonstrate prudence." *Id.* at *24.

### B.  Article III Standing

In *Biogen*, the court held that plaintiffs who had invested in at least one challenged fund had standing to bring an action on behalf of the entire plan in a representative capacity.  *Biogen*, 2021 WL 3116331, at *7-8; *see also McNeilly*, No. 1:20-cv-00870-PLM-PJG, at *6-7 (court held plaintiffs who had invested in at least one challenged fund "satisfied the requirements of Article III [standing] because they have alleged actual injury to their Plan accounts" and, accordingly, had

2

standing to proceed "on behalf of the plan or other participants even if the relief sweeps beyond [their] own injur[ies]."). Here, Defendants' argument Plaintiffs "lack constitutional standing to bring their claims regarding the Challenged Funds because they do not allege that they personally invested in any of them," Defs. Mem. at 19, should similarly be denied.

### C. Breach of the Duty of Prudence

Defendants generally take issue with Plaintiffs' choice of benchmarks. *See, e.g.,* Defs. Mem. at 10-15; Plfs. Mem. at 14-16. The court in *Biogen* concluded disputes over the adequacy of performance benchmarks "are inappropriate at the motion to dismiss stage." *Biogen,* 2021 WL 3116331, at *6 (citing *Cunningham v. Cornell Univ.*, 2017 WL 4358769, at *7 (S.D.N.Y. Sept. 29, 2017)); *see also Prime Healthcare*, 2021 WL 3076649, at *6 (court rejected defendants' challenges of plaintiffs' performance and fee benchmarks determining it was "unconvinced that it is appropriate to decide, at the pleadings stage, whether … [plaintiffs alleged] a meaningful benchmark" and found that determining the appropriateness of comparators for benchmarking "raises 'factual questions… not properly addressed on a motion to dismiss.'").

Similarly, the court in *McNeilly* concluded "whether a certain fund is a good comparator for another fund is clearly a fact intensive issue" that cannot be decided at the motion to dismiss stage. *McNeilly*, No. 1:20-cv-00870-PLM-PJG, at *12. The court reasoned, plaintiffs' allegations "the Committee failed for years to perform sufficient reviews or investigations into the Plan's performance," paired with the plausible inference Defendants had access to performance data throughout the relevant period, would constitute a breach of ERISA's ongoing duty to monitor. *Id.*, at *13 (citing *Tibble v. Edison Int'l*, 575 U.S. 523, 529 (2015)). Accordingly, "[g]iven that the Plaintiffs cannot see into Defendants' review process without the benefit of discovery, the Court [found] that this issue [was] also sufficiently pleaded to withstand the motion to dismiss." *Id*.

3

Here, Defendants' attack of Plaintiffs' fee and performance benchmarks should similarly be rejected.

With respect to the plaintiffs' claims that defendants failed to select an identical lower cost share class, the court in *McNeilly* concluded "[w]hether the fiduciary failed to leverage its size to negotiate a cheaper cost or was simply 'asleep at the wheel' and failed to notice cheaper options is irrelevant: either way is sufficient to state a claim for breach of duty of prudence." *McNeilly*, No. 1:20-cv-00870-PLM-PJG, at 14 (citing *Washington Univ.*, 960 F.3d at 483). The court reached a similar determination when assessing Plaintiffs' recordkeeping fees finding that the plaintiffs' allegations that "the Committee could have used the Plan's large size and large number of participants, together with the fact that the recordkeeping fee market is competitive and fees are declining, to negotiate lower fees for the Plan," but failed to do so because the Committee's process "was flawed." *Id.* at 16. The court concluded such allegations "adequately pleads a claim for breach of ERISA's duty of prudence." *Id.* Plaintiffs here similarly allege Defendants failed to monitor the Plan's recordkeeping and administrative fees and utilize the Plan's size to negotiate lower fees. ¶¶ 105-126.

**D. Breach of Duty of Loyalty**

The court in *McNeilly* upheld plaintiffs' breach of the duty of loyalty claim, finding plaintiffs raised the inference that "Defendants acted in a way that would save itself costs at the expense of the Plan's participants, or in a way that favored [the Plan's recordkeeper] over the Plan's participants[,]" either of which "[…] is inconsistent with the duty of loyalty." *McNeilly*, No. 1:20-cv-00870-PLM-PJG, at *19; *Garcia*, No. 1:20-cv-01078-PLM-PJG, at *19 (same).

The court determined Plaintiffs' allegations "that Defendants chose a combination of high-cost investments and a revenue-sharing fee structure to use a portion of the fees to pay" the

4

recordkeeper's "inflated fees," and when the recordkeeper was replaced at the end of 2020, "the high-cost options were replaced" adequately alleged a claim for breach of the duty of loyalty." *McNeilly*, No. 1:20-cv-00870-PLM-PJG, at *18-19 (quoting *Johnson v. Providence Health & Serv.*, 2018 WL 1427421, at *9 (W.D. Wash. Mar. 22, 2018)) ("While the complaint provides no direct evidence of self-dealing or preferential treatment for Fidelity, the inclusion and retention of various Fidelity investment products is circumstantial evidence that Defendants did not act "with an eye single toward beneficiaries' interests.").

For these reasons, Plaintiffs respectfully submit the opinions in *Prime Healthcare*, *McNeilly*, *Garcia*, *Biogen*, and *Sacerdote* support the denial of Defendants' motion to dismiss in its entirety.

Dated: August _____, 2021                Respectfully submitted,

By:    /s/ _____
       Mark K. Gyandoh                     Donald R. Reavey
       (admitted *pro hac vice*)           (admitted *Pro hac vice*)
       Gabrielle Kelerchian                **CAPOZZI ADLER, P.C.**
       (*pro hac vice to be requested*)    2933 North Front Street
       **CAPOZZI ADLER, P.C.**             Harrisburg, PA 17110
       312 Old Lancaster Road              Telephone: (717) 233-4101
       Merion Station, PA 19066            Facsimile: (717) 233-4103
       Telephone: (610) 890-0200
       Facsimile: (717) 233-4103           Email: donr@capozziadler.com

       Email: markg@capozziadler.com
              gabriellek@capozziadler.com

Counsel for Plaintiffs and the Putative Class