**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| Jana R. Rosenkranz, Joan Mondry, and Ramona Driscoll, individually and on behalf of all others similarly situated, | **ORDER** |
| Plaintiffs, | Case No: 3:20-cv-168 |
| vs. | |
| Altru Health System, the Altru Health System Retirement Committee, and John Does 1-20, | |
| Defendants. | |

Before the Court is a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), filed by Defendant Altru Health System ("Altru") and Defendant Altru Health System Retirement Committee (the "Committee") (Altru and the Committee, together the "Defendants") on March 5, 2021.[1] Doc. No. 31. On May 4, 2021, Plaintiffs Jana R. Rosenkranz, Joan Mondry, and Ramona Driscoll (collectively, the "Plaintiffs") filed a response in opposition. Doc. No. 34. Defendants filed a reply on June 10, 2021. Doc. No. 35. For the reasons set forth below, the motion is granted in part and denied in part.

## I.    FACTUAL BACKGROUND

The factual background, which the Court accepts as true for purposes of this motion, is taken from the Amended Class Action Complaint (the "Amended Complaint").[2] Doc. No. 20.

This is an Employee Retirement Income Security Act of 1974 ("ERISA") putative class action that is based on Defendants' management of the Altru Health System Retirement Savings

---

[1] Defendants John Does 1-20 are "additional officers, employees and/[or] contractors of Altru who are/were fiduciaries of the Plan during the Class Period, the identities of whom are currently unknown to Plaintiffs[.]" Doc. No. 20, ¶ 34.

[2] Plaintiffs initiated this action by filing their Class Action Complaint on September 9, 2020. Doc. No. 3. The Amended Complaint was filed on January 19, 2021. Docs. No. 16, 20.

Plan (the "Plan") between September 9, 2014 to the present (the "Class Period"). Id. ¶ 13. Plaintiffs are Altru employees, who "invest[ed] in the options offered by the Plan and which are the subject of this lawsuit." See id. ¶¶ 9, 18-20. Defendants are the Plan's fiduciaries. See id. ¶¶ 23, 30, 32, 34. As fiduciaries, Altru appointed members of the Committee, and the Committee selected the specific funds available under the Plan and monitored their performance. Id. ¶ 25, 30. The Committee also monitored and reviewed fees associated with the Plan and its funds. Id. ¶ 31. In the Amended Complaint, Plaintiffs lodge two ERISA claims against the Defendants – (1) breach of the fiduciary duty of prudence against the Committee, and (2) breach of fiduciary duties by failing to adequately monitor the Committee against Altru.  Id. pp. 36-37.

### A.      The Plan

The Plan is a defined contribution or individual account plan, which provides individual accounts for each Plan participant. Id. ¶ 43. Plan participants can contribute a certain percentage of their annual compensation to their account. Id. ¶ 46. Altru matches a particular percentage of these participant contributions.[3] Id. ¶ 47. As alleged, during the Class Period, the Plan offered "several" different investment fund options, including target-date funds, domestic equity funds, international equity funds, and a collective trust, among others. Id. ¶¶ 53, 78. Plan participants could direct their contributions to any of the various funds available under the Plan. Id. ¶ 53.

Plaintiffs allege that the Plan qualifies as a "large" plan: in 2018, the Plan had approximately 4,300 participants and over $350 million dollars in assets across all funds. Id. ¶¶ 54, 116. As a large plan, the Plan had "substantial bargaining power" to negotiate its expenses incurred from various fees. Id. ¶ 10. One such fee is an investment management fee, which is a fee

---

[3] Altru also may, in its discretion, make nonelective contributions to the Plan. Doc. No. 20, ¶ 47.

that each individual fund within the Plan charges. Another fee is a recordkeeping fee, which relates to the expenses incurred by the Plan as a whole.

### B. Claim One – the Committee's Breach of the Fiduciary Duty of Prudence

For their first claim, Plaintiffs challenge five of the Plan's funds (collectively, the "Challenged Funds")[4] and allege the Committee breached its fiduciary duty of prudence under ERISA because it lacked a prudent process to monitor the Plan's investments and fees, among other things. Id. ¶ 71. Specifically, Plaintiffs claim the Committee failed to prudently monitor the Plan by (1) failing to investigate the availability of lower-cost share classes; (2) failing to investigate the availability of collective trusts; (3) selecting and retaining funds with higher investment management fees and poor performance; and (4) failing to monitor or control the Plan's recordkeeping fees. Id. ¶ 130.

### 1. Lower-Cost Share Class

First, Plaintiffs allege the Committee failed to investigate the availability of lower-cost share classes. A single investment fund may offer multiple share classes. These share classes hold identical investments and have the same manager; the only difference is cost. Id. ¶ 82. Institutional investors with more assets qualify for lower-cost share classes. Id. ¶ 83.

---

[4] The Challenged Funds include (1) JPMorgan SmartRetirement Funds (the "JPM Retirement Funds"), (2) the Pioneer Fundamental Growth Funds, (3) the T. Rowe Price Mid-Cap Growth Fund, (4) the Nuveen Real Estate Securities Fund, and (5) the Invesco Oppenheimer Developing Markets Fund. Doc. No. 31-1, p. 10 (citing Doc. No. 20, ¶ 88); see also Doc. No. 20, ¶¶ 78, 85-86, 88. The Challenged Funds consist of target-date funds, domestic equity funds, and an international equity fund. See Doc. No. 20, ¶ 78. The JMP Retirement Fund is a target-date fund that has several different "vintages." Each vintage of the JMP Retirement Fund identifies that vintage's target retirement date, e.g., JPM Retirement Fund 2025, JPM Retirement Fund 2030, JPM Retirement Fund 2035, etc.

As alleged, the Challenged Funds had lower-cost share class options available during the Class Period.[5] Id. ¶ 91. Plaintiffs allege that the Plan's status as a "large plan" qualified it to invest in these lower-cost share classes. Id. Yet, none of the Challenged Funds' lower-cost share classes were offered under the Plan. See id. ¶ 87.

Using 2020 expense ratios, Plaintiffs compare the Challenged Funds' share classes that were offered under the Plan to their corresponding lower-cost share classes that were not. Id. ¶¶ 85-86. Plaintiffs allege that, except for price, the lower-cost share classes were identical to their more expensive share class counterparts and that the Committee should have identified these lower-cost share classes and transferred the Challenged Funds' assets into them. Id. ¶¶ 83, 87.

### 2.    Collective Trusts

Second, the Plaintiffs allege the Committee failed to investigate the availability of collective trusts. Collective trusts are an investment option that combines plan participants' investments. Id. ¶ 93. According to Plaintiffs, most mutual fund strategies are available in collective trust "format." Id. ¶ 95 n.13. Likewise, collective trusts and their mutual fund counterparts also have identical investments. Id. The similarities, however, end there. Unlike mutual funds, collective trusts are administered by banks or trust companies and are regulated by the Office of the Comptroller of the Currency (rather than the Securities and Exchange Commission). Id. ¶ 93 n.12. Additionally, collective trusts have simple disclosure requirements and cannot advertise or issue formal prospectuses. Id. As a result, collective trusts generally have lower fees. Id. ¶ 93.

---

[5] The lower-cost share classes for the Challenged Funds are as follows: JPM Retirement Funds (R6); Pioneer (Growth K); T. Rowe Rice Mid-Cap (Growth I); Nuveen Real Estate Securities (R6); Oppenheimer Developing Markets (R6). Id. ¶ 86.

Plaintiffs suggest that the Plan had at least one collective trust option throughout the Class Period. Id. ¶ 97. Plaintiffs further allege that the Plan qualified for collective trust versions of the JPM Retirement Funds and that the Committee should have identified the JPM Retirement Funds' collective trust options and transferred Plan assets into them. Id. ¶¶ 96-97.

### 3.    Investment Management Fees and Performance

Next, Plaintiffs allege the Committee selected and retained funds with high investment management fees and poor performance. Investment funds charge fees for investment management and other services. Id. ¶ 62. The investment management fees for a particular fund are calculated using that fund's expense ratio, which is a fixed percentage of the participant's total assets in that fund. Id. Plaintiffs allege that certain Plan funds had greater expense ratios than the median expense ratios for comparable funds in similarly sized plans, as provided by the ICI Median Report.[6] Id. ¶¶ 77-79. While the ICI Median Report's expense ratios are a "good gauge," they "understate the excessiveness of investment management fees of the Plan funds because many prudent alternative funds were available that offered lower expenses than the Median," according to Plaintiffs. Id. ¶ 80.

Plaintiffs additionally allege that certain Plan funds performed poorly "compared to their peers." Id. ¶ 100. Specifically, Plaintiffs challenge the performance of nine different vintages of the JPM Retirement Funds.[7] See id. ¶ 103. The JPM Retirement Funds is a "fund of funds" that

---

[6] The ICI Median Report compiled information from a 2016 study that collected data on median expense ratios. See id. ¶¶ 79, 78 n.9.

[7] The Court notes that there appears to be a discrepancy in the Amended Complaint. In paragraph 101, Plaintiffs challenge seven different vintages of the JPM Retirement Funds, claiming these funds had "5 year average returns that were worse than the majority of their peers[.]" Id. ¶ 101. While Plaintiffs provide the Percentage Rank in Peer Group for these seven funds, they do not provide any information about the "Peer Group" to which the funds are compared.

includes both actively and passively managed funds. See Doc. No. 31-13, p. 22. The JPM Retirement Funds have a "to" glide path, rather than a "through" glide path. Id. p. 93. Plaintiffs compare the JPM Retirement Funds to certain American Funds Target Date Retirement Funds (the "American Funds") and certain Fidelity Funds Index Investor funds (the "Fidelity Funds"), alleging that these funds had better performances than the JPM Retirement Funds in their three- and five-year average returns as of June 2020.[8] Doc. No. 20, ¶¶ 102-103.

### 4. Recordkeeping Fees

Lastly, Plaintiffs allege the Committee failed to monitor or control the Plan's recordkeeping fees.[9] Plans often enter into agreements with recordkeepers under which the recordkeepers provide a plan with various day-to-day services and, in return, the plan pays the recordkeeper a fee. These recordkeeping fees can either be paid directly by the plan's assets, indirectly by the plan's investments (called revenue sharing), or by some combination of both.[10] Id. ¶ 111.

During the Class Period, Alerus Financial ("Alerus") served as the Plan's recordkeeper. Id. ¶ 55. Alerus's recordkeeping fees—which included both revenue sharing and a flat fee—were paid

---

Two paragraphs later, Plaintiffs challenge nine different vintages of the JPM Retirement Funds— which include the first seven funds that Plaintiffs challenged. Plaintiffs compare these nine JPM Retirement Funds to specific American Funds or Fidelity Funds, claiming the American Funds and Fidelity Funds listed had better performances in their three- and five-year average returns as of June 2020. Id. ¶¶ 102-103. Because it is a more accurate and precise comparison, the Court will consider the performance of the nine funds listed in the Amended Complaint at paragraph 103, rather than the seven funds listed in paragraph 101.

[8] The JPM Retirement Income A only lists one lower cost alternative, the Fidelity Freedom Index Income Investor. Id. ¶ 103.

[9] Plaintiffs occasionally refer to "recordkeeping and administrative" fees, but only analyze the recordkeeping fees. See id. ¶¶ 76, 105, 117. Because recordkeeping fees are a subset of administrative fees, the Court will simply refer to these challenged fees as "recordkeeping" fees.

[10] Revenue sharing payments are payments made by investments within the plan, typically mutual funds, to the plan's recordkeeper or to the plan directly, to compensate for recordkeeping and trustee services that the mutual fund company otherwise would have to provide. Id. ¶ 111.

for with Plan assets. Id. ¶¶ 109, 115-116. Plaintiffs compare Alerus's recordkeeping fees to the fees listed within the 401k Averages Book.[11] Id. ¶¶ 118-19. Based on this comparison, Plaintiffs allege that Alerus's recordkeeping fees are unreasonable, and the Plan could have and should have obtained comparable or superior recordkeeping services at a lower cost. Id. ¶¶ 125-26.

C.    **Claim Two – Altru's Breach of Fiduciary Duty and Failure to Monitor**

For their second claim for relief, Plaintiffs allege that Altru breached its fiduciary duties under ERISA by failing to monitor the Committee. Id. ¶¶ 136-138. Specifically, Plaintiffs claim that Altru (1) failed to monitor and evaluate (or have a system to monitor and evaluate) the Committee's performance; (2) failed to monitor the Committee's process of evaluating Plan funds and the Committee's failure to investigate lower-cost share classes and collective trusts; and (3) failed to remove "inadequate" Committee members. See id. ¶ 138.

D.    **Procedural Posture**

Plaintiffs filed this putative class action on September 9, 2020. Doc. No. 1. In their Amended Complaint, Plaintiffs allege that the Defendants breached their fiduciary duties of prudence and monitoring under ERISA through the alleged mismanagement detailed above. Doc. No. 20, ¶¶ 13, 128-130, 135-138. Plaintiffs seek class certification, damages, and other equitable

---

[11] The 401k Averages Book contains information on the average costs of 401(k)s in "smaller plans," those under $200 million in assets. See id. ¶ 118.

relief. Id. p. 38-40. Defendants move to dismiss the Amended Complaint for lack of subject matter jurisdiction and for failure to state a plausible claim.[12] Doc. No. 31.

## II.   LAW AND DISCUSSION

### A.   Standing

"'If a plaintiff lacks standing, the district court has no subject matter jurisdiction." Rohan v. Saint Luke's Health Sys., Inc., 2020 WL 8410451, *3 (W.D. Mo. Jun. 22, 2020) (quoting Faibisch v. Univ. of Minn., 304 F.3d 797, 801 (8th Cir. 2002)). To that end, a defendant may move to dismiss a complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). "In a facial challenge under Rule 12(b)(1), the court accepts the factual allegations in the pleadings as true and views the facts in the light most favorable to the nonmoving party." Parmer v. Land O'Lakes, Inc., 518 F. Supp. 3d 1293, 1300 (D. Minn. 2021) (internal citations omitted); see also Larson v. Allina Health Sys., 350 F. Supp. 3d 780, 791 (D. Minn. 2018) (When "[d]efendants challenge the existence of jurisdiction on the face of the pleadings, and not through extrinsic evidence, the reviewing court must 'accept as true all factual allegations in the complaint, giving no effect to conclusory allegations of law.'" (quoting Stalley v. Catholic Health Initiatives, 509 F.3d 517, 521 (8th Cir. 2012)). The "court limits its inquiry to the pleadings, matters of public record and materials necessarily embraced by the pleadings." Parmer, 518 F. Supp. 3d at 1301.

---

[12] The Court held a status conference in this matter on September 2, 2021. Doc. No. 43. At the status conference, the Court inquired how the parties would like to proceed considering the United States Supreme Court issued a writ of certiorari in Divane v. Nw. Univ., 953 F.3d 980, 983 (7th Cir. 2020), cert. granted sub nom. Hughes v. Nw. Univ., No. 19-1401, 2021 WL 2742780 (U.S. July 2, 2021). Plaintiffs requested the Court decide this motion based on the present state of the law. Conversely, Defendants represented that they would prefer the Court stay its decision until the Supreme Court issued an order in Northwestern, however they declined to make a formal motion to that effect. The Court took the matter under advisement. Because no party filed a motion to stay, the Court decides this motion in reliance on the present state of the law.

To proceed with their claims on behalf of the Plan, Plaintiffs "must have both Article III standing and a cause of action under ERISA." Braden v. Wal-Mart Store, Inc., 588 F.3d 585, 588 (8th Cir. 2009) (internal citation omitted). At the heart of Article III standing is "the principle that in order to invoke the power of the federal court, a plaintiff must present a 'case' or 'controversy' within the meaning of Article III of the Constitution." Id. at 592. "To establish standing under Article III of the Constitution, a plaintiff must demonstrate (1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." Thole v. U. S. Bank N.A, 140 S. Ct. 1615, 1618 (2020) (citing Lujan v. Defenders of Wildlife, 112 S. Ct. 2130 (1992)). "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016); see also Alleruzzo v. SuperValu, Inc. (In re SuperValu, Inc.), 870 F.3d 763, 768 (8th Cir. 2017).

While "Article III generally requires injury to the plaintiff's personal legal interests . . . that does not mean that a plaintiff with Article III standing may only assert his own rights or redress his own injuries." Braden, 588 F.3d at 592 (internal citation omitted). Rather, "constitutional standing is only a threshold inquiry, and 'so long as [Article III] is satisfied, persons to whom Congress has granted a right of action, either expressly or by clear implication, may have standing to seek relief on the basis of the legal rights and interests of others.'" Id. (internal citation omitted). "In such a case, a plaintiff may be able to assert causes of action which are based on conduct that harmed him, but which sweep more broadly than the injury he personally suffered." Id. (internal citation omitted).

"Courts have recognized that a plaintiff with Article III standing may proceed under § 1132(a)(2) [of ERISA] on behalf of the plan or other participants." Id. at 593 (internal citations omitted). As articulated by the Eighth Circuit, it is "well settled" that a "suit under § 1132(a)(2) is brought in a representative capacity on behalf of the plan as a whole and that remedies under § 1109 protect the entire plan." Id. (internal quotations and citations omitted). "Thus, a plaintiff may seek relief under § 1132(a)(2) that sweeps beyond his own injury." Id.; see also Parmer, 518 F. Supp. 3d at 1301; Rohan, 2020 WL 8410451, at *4; Larson, 350 F. Supp. 3d at 792; Krueger v. Ameriprise Fin., Inc., 304 F.R.D. 559, 566-67 (D. Minn. 2014).

### B.    Analysis

Defendants first argue that Plaintiffs lack constitutional standing because Plaintiffs failed to allege that they invested in any of the Challenged Funds. Doc. No. 31-1, p. 23. In support of this argument, Defendants primarily rely on Thole.

In Thole, the United States Supreme Court found that plaintiffs, who participated in a defined-benefit plan, lacked Article III standing because they did not have an injury in fact. Thole, 140 S. Ct. at 1619.  Of "decisive importance" to the Court's decision was the fact that "plaintiffs' retirement plan is a defined-benefit plan, not a defined-contribution plan." Id. at 1618. The Court explained that defined-benefit plans are "more in the nature of a contract. The plan participants' benefits are fixed and will not change, regardless of how well or poorly the plan is managed. The benefits paid to the participants in a defined-benefit plan are not tied to the value of the plan." Id. at 1620.  Accordingly, "the participants in a defined-benefit plan are not similarly situated to the beneficiaries of a private trust or to the participants in a defined-contribution plan." Id. at 1619.

Here, Plaintiffs have sufficiently alleged that the Plan is a defined contribution or individual account plan. Doc. No. 20, ¶ 43. Defendants take issue with Plaintiffs' allegation that

"retirement benefits provided by the Plan are based <u>solely</u> on the amounts <u>allocated to each individual's account</u>," Doc. No. 31-1, p. 23 (emphasis in original). This language, however, originates directly from the definition of "individual account plan" or defined contribution plan" under ERISA. <u>See</u> 29 U.S.C. § 1002(34) (defining "individual account plan" or "defined contribution plan" as "a pension plan which provides for an individual account for each participant and benefits based solely upon the amount contributed to those accounts, and any income, expense, gains and losses, and any forfeitures of accounts of the participants which may be allocated to such participants account."). Therefore, the allegation that retirement benefits are based solely on the amounts allocated to each individual's account does not necessarily preclude Plaintiffs from sufficiently pleading an injury in fact. Rather, the language simply supports Plaintiffs' allegation as to the type of Plan at issue—a defined contribution or individual account plan. Consequently, the Court finds <u>Thole</u> inapposite. <u>See</u> <u>Parmer</u>, 518 F. Supp. 3d at 1301; <u>Davis v. Magna Int'l of Am., Inc.</u>, 2021 WL 1212579, at *4 (E.D. Mich. Mar. 31, 2021).

Defendants emphasize that Plaintiffs lack constitutional standing because they "do not allege any facts" that they "personally invested" in any of the Challenged Funds. Doc. No. 31-1, p. 23. But this is simply not true. In the Amended Complaint, each named Plaintiff alleges that she "participated in the Plan investing in the options offered by the Plan and which are the subject of this lawsuit." Doc. No. 20, ¶ 18-20. Accepting the factual allegations as true and viewing them in the light most favorable to the nonmoving party, the Court finds that Plaintiffs have clearly alleged that they invested in the Challenged Funds. Accordingly, Plaintiffs have sufficiently alleged facts that establish their standing under Article III.

Having satisfied the threshold issue of Article III standing, the Court will next consider whether Plaintiffs have sufficiently alleged that they have standing under ERISA. Plaintiffs

brought this putative class action pursuant to 29 U.S.C. §§ 1109 and 1132. Id. ¶ 1. As in Parmer, the Court finds that Braden is on point and dispositive. Under § 1132, Plaintiffs may seek relief that sweeps beyond their own injury. Because Plaintiffs have standing under Article III, the Court finds that § 1132(a)(2) provides Plaintiffs with a cause of action to seek relief for the entire Plan. Accordingly, the Court denies Defendants' motion as it relates to lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

### C.    Federal Rule of Civil Procedure 12(b)(6)

Having found that Plaintiffs have standing, the Court will now address the sufficiency of the Amended Complaint. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In turn, Federal Rule 12(b)(6) mandates the dismissal of a claim if the complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); Braden v. Wal-Mart Stores, Inc., 588 F.3d at 594. A complaint is facially plausible where its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

On a Rule 12(b)(6) motion to dismiss, the question is not whether the plaintiff will ultimately prevail, but whether the complaint is "sufficient to cross the federal court's threshold." Skinner v. Switzer, 562 U.S. 521, 530 (2011). While Twombly's plausibility standard is not a "probability requirement," "it asks for more than a sheer possibility that the defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556); see also Wilson v. Ark. Dep't of Human Servs., 850 F.3d 368, 371 (8th Cir. 2017). A court must "review the plausibility

of the plaintiff's claim as a whole, not the plausibility of each individual allegation." Whitney v. Guys, Inc., 700 F.3d 1118, 1128 (8th Cir. 2012) (citation and internal quotation marks omitted). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679; see also In re SuperValu, Inc., 925 F.3d at 962.

"Though matters outside the pleading may not be considered in deciding a Rule 12 motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleading." Ashanti v. City of Golden Valley, 666 F.3d 1148, 1151 (8th Cir. 2012) (internal quotation and citation omitted). "Documents necessarily embraced by the pleadings include documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." Id. (internal quotation and citation omitted). Accordingly, the Court considers the publicly available fund prospectuses, the 401k Averages Book, the ICI Median Report, and the 2019 Committee meeting minutes. See Parmer, 518 F. Supp. 3d at 1302 (citing Meiners v. Wells Fargo & Co., 898 F.3d 820, 823 (8th Cir. 2018)); Davis v. Washington Univ. in St. Louis, 960 F.3d 478, 484 n.3 (8th Cir. 2020) ("Like the district court, we consider the relevant fund prospectuses and plan disclosure documents because they are 'embraced by the pleadings.'" (citing Meiners, 898 F.3d at 823)).

D.     Analysis

Plaintiffs assert that Defendants breached their fiduciary duties under 29 U.S.C. § 1104 of ERSIA. Doc. No. 20, ¶ 13. Under that statute, Plaintiffs must prove that Defendants (1) acted as fiduciaries, (2) breached their fiduciary duties, and (3) thereby caused a loss to the plan. Parmer, 518 F. Supp. 3d at 1302 (citing Braden, 588 F.3d at 594). As articulated by the Eighth Circuit:

> ERISA imposes upon fiduciaries twin duties of loyalty and prudence, requiring
> them to act "solely in the interest of [plan] participants and beneficiaries" and to

> carry out their duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1). The statute's "prudent person standard is an objective standard ... that focuses on the fiduciary's conduct preceding the challenged decision." Roth, 16 F.3d at 917 (citing Katsaros v. Cody, 744 F.2d 270, 279 (2d Cir.1984)). In evaluating whether a fiduciary has acted prudently, we therefore focus on the process by which it makes its decisions rather than the results of those decisions. Id. at 917–18; Schaefer v. Ark. Med. Soc'y, 853 F.2d 1487, 1492 (8th Cir.1988) (fiduciaries must "investigate all decisions that will affect the pension plan.").

Braden, 588 F.3d at 595; see also Davis, 960 F.3d at 482.

At the pleading stage, Plaintiffs only need to allege "enough to infer from what is alleged that the process was flawed." Davis, 960 F.3d at 482 (internal citation and quotation omitted) (emphasis omitted). Plaintiffs, however, need not "directly address the actual process by which the plan was managed." Id. at 483 (internal citation and quotation omitted) (emphasis omitted) (cleaned up). "Circumstantial allegations about the fiduciary's methods based on the investment choices a plan fiduciary made can be enough." Id. (internal citation and quotation omitted) (cleaned up).

For an investment-by-investment challenge, Plaintiffs cannot "simply make a bare allegation that costs are too high, or returns are too low." Id. at 484. Instead, Plaintiffs "must provide a sound basis for comparison—a meaningful benchmark." Id. (internal citation and quotation omitted); Meiners, 898 F.3d at 822. "Different shares of the same fund may serve as a meaningful benchmark, but it is not enough to allege that 'cheaper alternative investments with some similarities exist in the marketplace.'" Parmer, 518 F. Supp. 3d at 1303 (quoting Meiners, 898 F.3d at 823). "Comparing funds with different investment strategies, such as passively managed and actively managed funds, are not meaningful benchmarks because '[t]hey have different aims, different risks, and different potential rewards[.]'" Id. (quoting Davis, 960 F.3d at

14

484). "Plausibility depends on the 'totality of the specific allegations in [each] case.'" Id. (quoting Meiners, 898 F.3d at 822).

### 1. Claim One – the Committee and the Fiduciary Duty of Prudence

Plaintiffs first claim for relief is as to the Committee. Specifically, Plaintiffs allege that the Committee breached its fiduciary duty of prudence under ERISA because it lacked a prudent process to evaluate the reasonableness of the Plan's investment options, investment management fees, and recordkeeping fees. Plaintiffs allege the Committee (1) failed to investigate the availability of lower-cost share classes; (2) failed to investigate the availability of collective trusts; (3) selected and retained funds with high investment management fees and poor performance; and (4) failed to monitor or control recordkeeping fees. See Doc. No. 20, ¶¶ 64-66, 69-76, 130.

#### a. Lower-cost Share Class

Plaintiffs first allege that the Committee failed to identify and transfer investments to the Challenged Funds' lower-cost share class. "Different shares of the same fund can be a meaningful benchmark for comparison." Parmer, 518 F. Supp. 3d at 1304 (citing Meiners, 898 F.3d at 823); Braden, 588 F.3d at 595. Accepting Plaintiffs' allegations as true and drawing all reasonable inferences in their favor, the Court finds that Plaintiffs sufficiently pleaded that the lower-cost class shares are a sufficient benchmark for the Challenged Funds. Plaintiffs allege that the Challenged Funds had lower-cost share classes available during the Class Period. Plaintiffs further allege that, except for price, the lower-cost share classes were identical to their more expensive share class counterparts. According to Plaintiffs, the Plan's size qualified it to invest in the Challenged Funds' lower-cost share classes, which were available during the Class Period. Yet, although the Plan had the ability to offer lower-cost class shares, it failed to do so. These allegations draw a plausible inference that the Committee failed to investigate and transfer Plan

assets to available lower-cost share classes. As a result, Plaintiffs have sufficiently pleaded a breach of the fiduciary duty of prudence claim based on the availability of the lower-cost share class funds.

### b.  Collective Trusts

Plaintiffs next allege that the Committee breached its fiduciary duty of prudence by failing to investigate and transfer assets into the collective trust version of the JPM Retirement Funds. Plaintiffs claim that the Committee could have use the Plan's bargaining power to obtain collective trusts, which had lower expense ratios then their JPM Retirement Fund counterparts. Doc. No. 20, ¶¶ 96, 99.

Courts have "routinely found that collective investment trusts are not meaningful comparators to mutual funds." Parmer, 518 F. Supp. 3d at 1305 (citing cases). Like Parmer and the cases cited therein, the Court finds that Plaintiffs have not adequately plead that the collective trusts are a meaningful benchmark to their mutual fund counterparts. Unlike mutual funds, collective trusts are administered by banks or trust companies and are regulated the Office of the Comptroller of the Currency (rather than the Securities and Exchange Commission). Doc. No. 20, ¶ 93 n.12. Additionally, collective trusts have simple disclosure requirements and cannot advertise or issues formal prospectuses. Id. Plaintiffs cannot simply allege that cheaper alternative investments with "some similarities" exist in the marketplace. Even accepting Plaintiffs factual allegations as true, the Court is not persuaded that the collective trusts identified by Plaintiffs are a sound basis of comparison for the JPM Retirement Funds based on the allegations in this case. See Parmer, 518 F. Supp. 3d at 1306 (explaining "collective trusts are subject to unique regulatory and transparency features that make a meaningful comparison impossible."). Accordingly,

Plaintiffs have not sufficiently pleaded a breach of the fiduciary duty of prudence based on a comparison of the JPM Retirement Funds with collective trusts.

### c. Investment Management Fees and Performance

Third, Plaintiffs allege that the Committee selected and retained funds with high investment management fees and poor performance. Plaintiffs first allege that the Challenged Funds had high investment management fees when compared to the ICI Median Report. Plaintiffs additionally allege that the JPM Retirement Funds had high investment management fees when compared to certain American Funds and Fidelity Funds. Plaintiffs also specifically challenge the performance of the JPM Retirement Funds. To that end, Plaintiffs allege that the JPM Retirement Funds performed poorly when compared to the same American Funds and Fidelity Funds.

### i. Challenged Funds' Investment Management Fees

Plaintiffs allege that the Committee imprudently selected and retrained the Challenged Funds because they had high investment management fees as demonstrated by their expense ratios. Plaintiffs compare the Challenged Funds' expense ratios to the ICI Median Report's expense ratios for "comparable funds in similarly sized Plans." Doc. No. 20, ¶ 77-80. Based on this comparison, Plaintiffs allege that the Challenged Funds had greater expense ratios than those listed in the ICI Median Report. Id. Defendants counter that the ICI Median Report includes expense ratios from both actively managed and passively managed funds, and therefore, is not a meaningful benchmark. Doc. No. 31-1, p. 15. The Court agrees.

Once again, as a starting point, Plaintiffs must provide a sound basis for comparison—a meaningful benchmark. As explained in Parmer, "although the ICI [Median Report] considers the size of the Plan and the 'category' of fund, it fails to differentiate between passively and actively managed funds." Parmer, 518 F. Supp. 3d at 1303. "Passively managed funds [] ordinarily cannot serve as meaningful benchmarks for actively managed funds, because the two types of funds 'have

different aims, different risks, and different potential rewards that cater to different investors.'" Davis v. Salesforce.com, Inc., No. 20-CV-01753-MMC, 2020 WL 5893405, at *3 (N.D. Cal. Oct. 5, 2020) (quoting Davis, 960 F.3d at 485).

Here, Plaintiffs compare the Challenged Funds to the ICI Median Report. There are no specific allegations in Plaintiffs' Amended Complaint that suggest that the Court should depart from the reasoning in Parmer. Rather, based on the allegations in this case, comparing actively managed funds to passively managed funds is akin to comparing apples to oranges. See Davis, 960 F.3d at 485. Put simply, Plaintiff failed to allege that the ICI Median Report, which contains both actively and passively managed funds, is a meaningful benchmark. Without a meaningful benchmark, Plaintiffs' allegation that the Challenged Funds have expense ratios greater than those listed in the ICI Median Report is simply a bare allegation that costs are too high. See Meiners, 898 F.3d at 823-24 ("We believe the existence of a cheaper fund does not mean that a particular fund is too expensive in the market generally or that it is otherwise an imprudent choice. Any other conclusion would exempt ERISA plaintiffs both from pleading benchmarks for the funds and from pleading internal processes about selecting funds." (emphasis in original)); Braden, 588 F.3d at 596 n.7 ("[N]othing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund." (internal citation and quotation marks omitted)).

Accordingly, Plaintiffs have not sufficiently pleaded that the Committee breached the fiduciary duty of prudence by retaining the Challenged Funds when they had higher investment management fees than those listed in the ICI Median Report. The Court will next address the challenge to the JPM Retirement Funds.

### ii. JPM Retirement Funds' Performance and Investment Management Fee

Plaintiffs also challenge the JMP Retirement Funds' performance and expense ratio. Doc. No. 20, ¶ 100. Plaintiffs first allege certain American Funds and certain Fidelity Funds performed better than the JPM Retirement Funds in their three- and five-year average returns as of June 2020. Id. ¶ 102. Plaintiffs then challenge the JPM Retirement Funds' investment management fees by comparing their 2020 expense ratios to the expense ratios of these same American Funds and the Fidelity Funds.[13] Id. ¶ 103. Before addressing whether Defendants were imprudent for retaining the JPM Retirement Funds based on its poor performance or high investment management fee, the Court must first determine whether Plaintiffs have sufficiently pleaded that these American Funds and Fidelity Funds are meaningful benchmarks.

Based on the table provided in the Amended Complaint, the American Funds are actively managed funds, and the Fidelity Funds are passively managed funds. See id. The JPM Retirement Funds include both actively and passively managed funds. See Doc. No. 31-13, p. 22. Again, passively managed funds ordinarily cannot serve as a meaningful benchmark for actively managed funds and vice versa – they have "different aims, different risks, and different potential rewards that cater to different investors." Davis, 2020 WL 5893405, at *3 (internal citation and quotation omitted); see also Parmer, 518 F. Supp. 3d at 1303. Comparing actively managed funds to passively managed funds is like comparing apples and oranges. See Davis, 960 F.3d at 485. As such, the Court finds that the actively managed American Funds and passively managed Fidelity Funds identified in the complaint are not meaningful benchmarks for the blended JPM Retirement Funds.

---

[13] The JPM Retirement Income A fund is only compared to the Fidelity Freedom Index Income Investor (passive) and has no listed actively managed fund comparison. See Doc. No. 20, ¶ 103.

Plaintiffs allege that, when compared to the JPM Retirement Funds the American Funds and Fidelity Funds had "no material difference in risk/return profiled" and had a "high correlation" of funds "such that any difference was immaterial." Doc. No. 20, ¶ 102. With this allegation, Plaintiffs are closer, but not close enough; even taking Plaintiffs' allegations as true and drawing all inferences in their favor, Plaintiffs' conclusory allegation that the American and Fidelity Funds have similar risk profiles and a "high correlation" of holdings is not enough to plausibly plead a meaningful benchmark. Additionally, although they highlight the risk profile, Plaintiffs did not provide any information regarding the investment strategy for either the American Funds or the Fidelity Funds so that the Court can consider whether they are a sound basis of comparison. The JPM Retirement Funds have a "to" glide path, rather than a "through" glide path. Doc. No. 31-13, p. 93. Plaintiffs failed to allege any information regarding the glide path of either the American Funds or Fidelity Funds. A sole allegation of a "high correlation" of funds, furthermore, does not plausibly show that the American Funds and Fidelity Funds have a similar asset allocation such that they are meaningful benchmarks.

Finally, as discussed above, the JPM Retirement Funds have both actively and passively managed components; conversely, the American Funds are actively managed, and the Fidelity Funds are passively managed. Considering the totality of the specific allegations in this case, Plaintiffs have only plead that alternative investments with "some" similarities exist in the marketplace. And that is not sufficient to show that the American and Fidelity Funds are meaningful benchmarks for the JPM Retirement Funds. Accordingly, Plaintiffs have failed to sufficiently plead a claim that the Committee breached its fiduciary duty of prudence as shown by the Challenged Funds' investment management fees or the JMP Retirement Funds' performance and investment management fees.

### d. Recordkeeping Fees

Finally, Plaintiffs claim that the Committee failed to monitor or control the recordkeeping fees that Alerus charged the Plan. Alerus's recordkeeping fees include both revenue sharing and direct compensation, which Plaintiffs allege was "clearly imprudent and disloyal to the Plan participants." See Doc. No. 20, ¶ 124. Plaintiffs allege that Defendants should have obtained recordkeeping services comparable or superior to Alerus's at a lower cost. See id. Defendants argue that the Court should dismiss the recordkeeping fee claim because the Plaintiffs did not allege facts showing an apples-to-apples comparison of services or fees and the 401k Average Book is not a proper benchmark. See Doc. No. 31-1, pp. 7, 24. The Court disagrees.

The recordkeeping claim primarily hinges on information that is peculiarly under the control of Defendants and not available to Plaintiffs except through the course of discovery. See Braden, 588 F.3d at 598 ("No matter how clever or diligent, ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences. Thus, while a plaintiff must offer sufficient factual allegations to show that he or she is not merely engaged in a fishing expedition or strike suit, we must also take account of their limited access to crucial information. If plaintiffs cannot state a claim without pleading facts which tend systemically to be in the sole possession of defendants, the remedial scheme of the statute will fail, and the crucial rights secured by ERISA will suffer.").

Considering Plaintiffs' limited information, they have offered enough factual allegations to show that they are not merely engaged in a fishing expedition. Here, Plaintiffs allege that Altru collected both revenue sharing and a flat fee. Doc. No. 20, ¶ 116. Plaintiffs allege that the size of the Plan's assets and number of participants qualify it for lower-cost recordkeeping services. Id. ¶ 125. Plaintiffs additionally claim that in the marketplace overall there is a general trend towards

lower recordkeeping expenses. Id. Plaintiffs also raise information gleaned from the 2019 Committee meetings and a "review of some of the account statements of Plan participants[.]" Plaintiffs have alleged enough in the Amended Complaint for the Court to plausibly infer that the Committee's process regarding the recordkeeping fees may have been flawed. Plaintiffs have sufficiently pleaded the recordkeeping fees claim, and the Defendants' motion to dismiss the claim is denied.

### 2. Claim Two – Altru's Breach of Fiduciary Duty and Failure to Monitor

Lastly, Defendants ask the Court to dismiss Plaintiffs' failure to monitor claim against Altru. Defendants argue the second claim for relief is "wholly derivative of Plaintiffs' imprudent investment and recordkeeping fee claims." Doc. No. 31-1, p. 27. The failure to monitor claim, however, is derivative of all the breaches of fiduciary duty claims against the Committee. See Doc. No. 20, ¶¶ 135-138. Because Plaintiffs have sufficiently stated a claim for breach of the fiduciary duty of prudence, the Court finds that Plaintiffs have also sufficiently pleaded the derivative failure to monitor claim against Altru. Parmer, 518 F. Supp. 3d at 1308.

On a final note, to the extent Plaintiffs claim a breach of the fiduciary duty of loyalty, that claim is dismissed. The word "loyal" only appears twice in Plaintiffs' Amended Complaint: once when listing the twin duties under ERISA and again when Plaintiffs allege how payments of the recordkeeping costs was "disloyal to Plan participants." Doc. No. 20, ¶¶ 2, 124. As such, Plaintiffs did not sufficiently plead a claim based on a breach of the fiduciary duty of loyalty. See Parmer, 518 F. Supp. 3d at 1308 ("It is not enough for plaintiffs to allege that defendants' actions benefitted third-party recordkeepers; plaintiffs must plead that they did so with the goal of benefitting [those recordkeepers]").

22

III.     **CONCLUSION**

The Court has carefully reviewed the entire record, the parties' filings, and the relevant law. For the reasons set forth above, the Defendants' motion to dismiss (Doc. No. 31) is **GRANTED** in part and **DENIED** in part. Specifically, the Court **GRANTS** Defendants' motion to dismiss the collective trust, investment management fees, and performance claims under Plaintiffs' first claim for relief against the Committee but **DENIES** the motion as to Plaintiffs' remaining allegations (regarding lower-cost class share and recordkeeping fees) under Plaintiffs' first claim for relief. Because the second claim for relief, as asserted against Altru, is derivative of the first claim, the Court **DENIES** Defendants' motion as the second claim for relief.

**IT IS SO ORDERED**.

Dated this 10th day of December, 2021.

/s/ Peter D. Welte
Peter D. Welte, Chief Judge
United States District Court